UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVERN STEPHEN FILIPUNAS, JR.,

   Petitioner,

v.

SHERMAN CAMPBELL,

   Respondent.

Case No. 20-11143
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING
PETITION FOR WRIT OF HABEAS CORPUS [1]**

In 2013, LaVern Filipunas pled no contest to one count of extortion and one count of impersonating a peace officer to commit a crime. He secured a favorable plea deal that required him to serve just one year in jail followed by a five-year term of probation. As part of that deal, Filipunas agreed not to assault, abuse, or threaten anyone during the probationary period.

In 2016, Filipunas' ex-wife, Angela, received a personal protection order (PPO) against him. She accused him of physically and sexually assaulting her, among other things. Following a probation-revocation hearing where both Angela and Filipunas testified, Filipunas' probation was revoked. He was resentenced to up to 20 years in prison.

Filipunas sought relief for the probation revocation in Michigan state court by filing a motion for leave to appeal and two motions for relief from judgment. He

primarily argued that Angela perjured herself at the hearing. These efforts were unsuccessful.

Filipunas now turns to this Court, seeking a writ of habeas corpus. He raises six claims challenging the procedure and substance of the probation-revocation hearing, and again claims actual innocence. Having reviewed the pleadings and the state-court record, the Court will deny the petition.

## I. Background

In 2013, Filipunas solicited two women to engage in sex for money. (ECF No. 9-3, PageID.307.) But rather than pay them per their agreement, he arrived at the motel, "produced a badge, identified himself as a police officer, and proceeded to have the agreed sexual contact with each of them." (*Id*.) Because the women thought he was a police officer, they "engaged in these acts without pay against their will." (*Id*.) Following his arrest, Filipunas pled no contest to one count of extortion and one count of impersonating a peace officer to commit a crime. (*Id*. at PageID.306–307.)

At the plea hearing, the judge noted his "surprise" that Filipunas was able to secure "such a favorable plea bargain." (ECF No. 9-5, PageID.312.) So, "with a certain level of caution[,]" the judge accepted the plea and sentenced Filipunas to one year in county jail followed by five years of probation. (*Id*.) But the judge noted that the crime was "so horrific that it would justify [him] being sent to prison . . . for a substantial period of time." (*Id*.) Specifically, he stated that Filipunas could be resentenced to more than 20 years in prison if he violated the terms of his probation. (*Id*. at

2

PageID.313.) One such term required that he not "engage in any assaultive, abusing, threatening, or intimidating behavior." (ECF No. 9-4, PageID.309.)

In 2016, Filipunas found himself back before the judge. (*See generally* ECF No. 9-8.*)* He was accused of six probation violations stemming from allegedly abusive and threatening behavior towards his ex-wife, Angela Filipunas. (ECF No. 1-1, PageID.132–135.) At the probation violation hearing, Angela testified that Filipunas punched her and gave her a "black eye for almost two weeks[,]" that he would "just demand [sex]—force it" on her about once a week, and that he threatened to take away her car and prevent her from seeing their children (among other things) if she "didn't play nice[.]" (ECF No. 9-8, PageID.320.) She also testified that Filipunas "kicked in" her front door. (*Id.* at PageID.323.) On cross-examination, Angela admitted that she had burned Filipunas' clothes after an argument, harassed his girlfriend, sent him "threatening" text messages, and said she might put him in jail after he stopped paying the electricity bill at their home. (*Id.* at PageID.321–322.)

Filipunas and his girlfriend also testified at the hearing. For his part, Filipunas acknowledged that the relationship with his ex-wife had been "tumultuous[.]" (ECF No. 9-8, PageID.323.) But he said that Angela "would always take things to the next level" and had "become physically violent on a few occasions." (*Id.*) And he strenuously denied each and every alleged probation violation. (*See e.g.*, *id.* at PageID.324 ("[D]id you ever physically assault her? A. No, I did not. Q. Did you ever sexually assault her while you were living in the residence? A. No, I have not.").)

Filipunas' girlfriend testified that she was with him on some of the dates that Angela alleged she had been assaulted. (*Id.* at PageID.327.)

At the conclusion of the testimony, the court recounted the conduct underlying Filipunas' extortion and impersonation charges. (ECF No. 9-8, PageID.328.) And he referenced similar, uncharged conduct in Kalamazoo County. (*Id.*) He explained that Filipunas had previously been investigated for impersonating a police officer to coerce a sex worker into performing sex acts without payment. (*Id.*) He continued, "I bring that to mind because these particular facts of dominance and control appear to be a theme which has been perpetuated and generated to the present day. . . . And clearly, that dominion and control is the subject matter contained in [the PPO]. . . . That is without question and based on the testimony we received today." (*Id.*; *see also* ECF No. 1-1, PageID.146 (more legible copy of this page of the probation-revocation transcript).)

The judge then determined that Angela was more credible than Filipunas and found him guilty of the probation violations. He explained, "[w]hen examining credibility, . . . Angela Filipunas admitted to threatening the defendant with jail and other instances of reciprocal verbal abuse and tends to give her version of the facts far more credibility than a person who walks into court claiming to be a blameless victim of an otherwise uncontrolled . . . ex-spouse." (*Id.*) He continued, "the instances of conduct described and the manner in which Mr. Filipunas exercised dominion and control over his former wife after the divorce are consistent in my opinion with the pattern of conduct that was first reported in November of 2012 in Kalamazoo[.] And

4

because I'm obliged to consider, I believe, the entire social history of an individual, in determining Angela Filipunas' credibility, I've examined her testimony in light of those facts, which even the defendant admitted in the past when he tendered his plea of no contest. That is to say, he did not deny them." (*Id.*) Accordingly, he concluded that "all the charge[s] have been proven by a preponderance of the evidence[.]" (*Id.*) He then sentenced Filipunas as follows: "For impersonation of a police officer, that you serve a term of not more than 48 nor less than 32 months. And for extortion, to serve a term of not more than 240 nor less than 80 months." (*Id.* at PageID.330.)

Following a motion for leave to appeal and two motions for relief from judgment, Filipunas filed this petition for habeas corpus. (ECF No. 1.) He raises six claims challenging the procedure and substance of the probation-revocation hearing. And he claims to have new evidence showing that he is actually innocent of the probation violations.

For the reasons set forth below, the Court finds that he is not entitled to relief.

## II. Procedurally-defaulted Claims

The Warden argues that three of Filipunas' six claims are procedurally defaulted. The Court agrees.

A federal court may not grant a writ of habeas corpus unless "the applicant has exhausted all available remedies in state court." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, each claim must have been "fairly presented" to the state courts, including the court of appeals and the state supreme court. *See Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). When a petitioner fails to exhaust his claims and

5

has no remaining state-court remedy, his claims are properly deemed procedurally defaulted rather than simply unexhausted. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Landrum v. Mitchell*, 625 F.3d 905, 918 (6th Cir. 2010). Procedurally defaulted claims may only be reviewed in federal court if the petitioner can demonstrate: (1) cause to excuse the default and actual prejudice from the alleged constitutional violation; or (2) that failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Warden argues that three of Filipunas' claims were never presented to any state court: (I) that he was not afforded a neutral and detached body at his probation-revocation hearing; (III) that he should have been permitted to challenge the PPO before it was used against him at the probation-revocation hearing; and (V) that he never received a written statement regarding the facts relied on in determining his guilt at the probation revocation hearing. (ECF No. 8, PageID.206.) And, says the Warden, these claims are now procedurally defaulted because no state-court remedy is available. (ECF No. 8, PageID.207.)

The Court agrees that these claims have been procedurally defaulted. None of these claims were presented in Filipunas' application for leave to appeal or in either of his two motions for relief from judgment. (ECF No. 9-16, PageID.514 (motion for leave to appeal raising claims that the judge improperly considered uncharged conduct and that his counsel was ineffective); ECF No. 9-11, PageID.439–445 (first motion for relief from judgment raising single claim of actual innocence); ECF No. 9-

15 (second motion for relief from judgment raising single claim of actual innocence).) And because Filipunas already filed two motions for relief from judgment, he has no remaining state-court remedy. *See Wright v. Jackson*, No. 18-2443, 2019 WL 7372698, at *4 (6th Cir. Mar. 29, 2019) (finding procedural default where claims were unexhausted and petitioner had already filed one motion under Mich. Ct. R. 6.502(G)(1)); *see also* (ECF No. 9-15 (denying second motion for relief from judgment as statutorily barred under Mich. Ct. R. 6.502(G))).

But Filipunas asks the Court to excuse the default in order to prevent a fundamental miscarriage of justice, again arguing that he is actually innocent of any probation violations. (ECF No. 10, PageID.897.)

A fundamental miscarriage of justice occurs "when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *See Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013). To be credible, such a claim requires the petitioner to "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented" previously. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). And to establish "the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (citing *Schlup*, 513 U.S. at 327).

Filipunas says that he has provided substantial evidence that "every probation violation charge was proven to be based on a lie." (ECF No. 10, PageID.897 (referencing ECF No. 1, PageID.40–91 (Angela's testimony at the PPO-termination hearing); ECF No. 1-1, PageID.107–123 (texts between Angela and Filipunas), ECF No. 1-1, PageID.130 (recanting affidavit from Angela)).)

Even armed with this evidence, Filipunas has not come close to showing that he is actually innocent.

For one, as the Warden points out, Filipunas only argues that he is innocent of the probation violations, not that he is innocent of the underlying conviction. (ECF No. 8, PageID.209.) As the judge noted when he sentenced Filipunas the first time, the conduct he pled to "would justify [him] being sent to prison today for a substantial period of time." (ECF No. 9-5, PageID.312.) And at the probation-revocation hearing, the judge revoked his probation and "sentenced" him only for the underlying crimes of extortion and impersonation. (ECF No. 9-8, PageID.330.) So the Court is not convinced that actual innocence of the probation violations is the correct inquiry on habeas review. In other words, even assuming Filipunas is right about the weight of the new evidence, it is not clear that he is "actually innocent" since he pled to—and does not challenge—the underlying conviction that he was sentenced for. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[I]n an extraordinary case, where a constitutional violation has probably resulted *in the conviction of one who is actually innocent*, a federal habeas court may grant the writ even in the absence of a showing

8

of cause for the procedural default." (emphasis added)). *But see Scott v. Duffy*, 372 F. App'x 61, 63–64 (11th Cir. 2010).

For two, applying the actual innocence standard to the probation violations, most of the evidence is not new. *See Schlup*, 513 U.S. at 324. Indeed, much of what Filipunas relies on here was discussed at the probation-revocation hearing, including Angela burning his clothes, harassing his girlfriend, threatening to put him in prison, and sending him abusive text messages. (*See, e.g.*, ECF No. 9-8, PageID.329 (trial judge noting at probation-revocation hearing that Angela "admitted to threatening the defendant with jail and other instances of reciprocal verbal abuse").) So this is cumulative rather than new evidence.

For three, none of the evidence is reliable. Filipunas' evidence merely impeaches Angela's testimony at the probation-revocation hearing. But impeachment evidence is insufficient to sustain a claim of actual innocence. *See Calderon v. Thompson*, 523 U.S. 538, 563 (1998) (finding that "impeachment evidence provides no basis for finding a miscarriage of justice"); *Ogle v. Ohio Dep't of Rehab. & Corr., Adult Parole Auth.*, No. 17-3701, 2018 WL 3244017, at *5 (6th Cir. Feb. 27, 2018) (same).

In any case, the impeachment evidence here is weak. Take just one example. Filipunas' petition says that Angela's "credibility was absolutely destroyed [at the PPO-termination hearing, where] it was proven that she had lied in requesting the order of protection." (ECF No. 1, PageID.12.) But it was not "proven" that Angela lied. Indeed, she gave similar testimony at both hearings. (*See, e.g.*, ECF No. 1, PageID.46,

9

49 ("I received the black eye from my ex-husband. He kicked in my door. He has threatened me over the years . . . he forced me to have sex with him.").) True, she was inconsistent on cross-examination about some of the dates in her PPO petition. (ECF No. 1, PageID.74–76.) And it is true that she admitted to sending text messages that harassed Filipunas' girlfriend and that propositioned Filipunas for sex. (*Id.*) But that does not prove that she lied—it is quite possible that she sometimes propositioned Filipunas for sex and that he sometimes physically and sexually assaulted her. And contrary to Filipunas' assertions, the judge at the PPO-termination hearing did not disbelieve Angela. Instead, he said that his job was to "determin[e] whether or not there's going to be behavior in the future that needs to be protected." (ECF No. 1-1, PageID.101.) And he terminated the PPO in large part because, "[o]bviously, with Mr. Filipunas being in prison, there's not going to be any violent type behavior." (*Id.* at PageID.102.) Only after Filipunas promised not to contact Angela from prison did he terminate the PPO. (*Id.* at PageID.104.) So there was no finding, implicit or explicit, that Angela was not credible. And, in any event, re-weighing credibility is not a proper function of this Court. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (noting that a habeas court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court").

Additionally, "recanting affidavits are always viewed with extreme suspicion." *See Williams v. Coyle*, 260 F.3d 684, 708 (6th Cir. 2001) (internal quotation marks omitted); *see also Herrera v. Collins*, 506 U.S. 390, 417 (1993) (rejecting habeas claim

of actual innocence because the "affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations[,]" among other reasons). This is especially true when victims of domestic violence recant their testimony. *See, e.g.*, *Thomas v. Dillard*, 818 F.3d 864, 895 (9th Cir. 2016), *as amended* (May 5, 2016) (Bea, J., concurring in part) ("But it is well-documented that victims of domestic violence—even those who initially report their abusers to police— more often than not recant or refuse to cooperate with law enforcement." (internal quotation marks omitted) (citing studies)). So the affidavit is not reliable evidence of actual innocence. In addition, this affidavit recants only a narrow portion of Angela's testimony: "LaVern Filipunas did not force me to engage in sexual activities in 2016 in exchange for driving a vehicle he owned" and "[a]t no point did LaVern Filipunas threaten to take the kids because I refused to engage in sex acts with him." (ECF No. 1-1, PageID.130.) Notably, nowhere does Angela categorically recant the testimony that she was physically and sexually assaulted for other reasons or for no reason at all.

In sum, these claims are procedurally defaulted. And because Filipunas has not presented new, reliable evidence of his innocence, no miscarriage of justice will result from the Court's refusal to review these claims.

### III. Remaining Claims

That leaves the three claims that were exhausted.

The Antiterrorism and Effective Death Penalty Act ("AEDPA") (and 28 U.S.C. § 2254 in particular) "confirm[s] that state courts are the principal forum for

11

asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Cullen v. Pinholster*, 563 U.S. 170, 182 (2011). To be more specific, if the state courts adjudicated the claim "on the merits," then, under § 2254(d), a petitioner must show that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). But if the state courts did not adjudicate a claim "on the merits," § 2254(d) "does not apply." *Bies v. Sheldon*, 775 F.3d 386, 395 (6th Cir. 2014).

## A.

Filipunas first claims that the trial court "declared [him] guilty of a crime that was not before the court[.]" (ECF No. 1, PageID.2.) Specifically, he objects to the judge's reference to a like crime against a sex worker in Kalamazoo in 2012—a crime for which Filipunas was investigated but never charged. (*Id.* at PageID.27–29.) He says that the judge referenced the investigation at his sentencing and concluded that "it was [Filipunas]" that committed the other, uncharged crime. (*Id.*)

Even assuming this raises a claim cognizable on habeas review, it has no merit. When placed in the proper context, the judge merely referenced the other investigation to further support his conclusion that "these particular facts of dominance and control [over women] appear[ed] to be a theme" in Filipunas' life. (ECF No. 9-8, PageID.328.) And he later clarified that he "believe[d he] was obliged to consider . . . [Filipunas'] entire social history" in order to evaluate Angela's

12

credibility as a witness because she, too, claimed to be a victim of his dominating and controlling behavior. (*Id.* at PageID.329.) However, when the judge actually determined that Filipunas violated the terms of his probation, he did not consider the uncharged conduct in Kalamazoo. (*See id.*); *see also Perks v. Vasbinder*, No. 05-CV-72657, 2006 WL 2594470, at *11 (E.D. Mich. Sept. 8, 2006) (denying similar habeas claim related to judge's consideration of uncharged conduct because the trial court made "clear that it was relying on the evidence of the *charged* misconduct in finding that petitioner violated his probation").

As to the allegation that the judge found him "guilty" of the uncharged conduct in Kalamazoo, he did no such thing. Filipunas points to the following colloquy, but he selectively omitted the end of the exchange:

> THE DEFENDANT: . . . May I say one thing, your Honor? The thing that you're referencing in Kalamazoo was never—there was never any charges. There was never anything. That one I've never—It—I had—I mean, I understand it's in the PSI and stuff like that, but I was never affiliated with that in any way.
>
> THE COURT: It was somebody else?
>
> THE DEFENDANT: I have no idea, your Honor. I spoke to an officer once, and there were never any charges or anything brought up. It was never—
>
> THE COURT: So it was just a fluke that your name came up and just a coincidence that you happened to be equipped with a badge and handcuffs in that Wyoming Super 8 Motel with these two women? Is that what you're telling me?
>
> THE DEFENDANT: No, sir, I never had—no, sir. That's not what I'm saying. . . . This was so long ago. But no, that's not what I'm saying, your Honor.
>
> THE COURT: It was you.

13

>THE DEFENDANT: In Kalamazoo?
>
>THE COURT: In Grand Rapids.
>
>THE DEFENDANT: In Grand Rapids? Your Honor, yes, sir, it was.
>
>THE COURT: Well, that's enough. . . . But the point is, I'm of the opinion that you tend to use means to extort your will that are not acceptable, and you continue to do that in this case.

(ECF No. 9-8, PageID.330.) The end of this exchange shows that the judge was referencing the conduct that Filipunas pled to. Indeed, the few times he referenced the uncharged conduct during the hearing was only as further evidence of an objectionable pattern of behavior towards women. There was simply no finding of guilt and no sentence imposed for the uncharged conduct in Kalamazoo. (*See* ECF No. 9-8, PageID.330 ("For impersonation of a police officer, that you serve a term of not more than 48 nor less than 32 months. And for extortion, to serve a term of not more than 240 nor less than 80 months. . . . These are your two final sentences.").)

So this claim does not warrant habeas relief.

**B.**

In his second claim, Filipunas argues that the judge violated the Due Process Clause when he found him guilty of the fourth probation violation. (ECF No. 1, PageID.2.) In that violation, Filipunas was accused of telling Angela that "she would suffer and pay" if she told the police or a probation officer of Filipunas' behavior. (ECF No. 1-1, PageID.134.) Filipunas explains that "[a]t no point during the probation violation hearing was any testimony given that affirmed this charge. Absolutely none." (ECF No. 10, PageID.895.)

14

This claim fails too. For starters, as the trial judge noted, "[e]ven if [Filipunas] was found guilty of one probation violation, [his] sentence of 80 to 240 months' imprisonment was proportional and within guidelines." (ECF No. 9-13, PageID.494.) Filipunas did not challenge this finding. So even assuming Filipunas is right about this one probation violation out of the six he was found guilty of, he would not be entitled to habeas relief.

But Filipunas is not right. While the Supreme Court has not specifically held that due process requires sufficient evidence to support the revocation of probation, it has suggested as much. *See Black v. Romano,* 471 U.S. 606, 615–16 (1985) ("The decision to revoke Romano's probation satisfied the requirements of due process. In conformance with *Gagnon* and *Morrissey,* the State afforded respondent a final revocation hearing. The courts below concluded, and we agree, that there was sufficient evidence to support the state court's finding that Romano had violated the conditions of his probation."). However, the Supreme Court has made clear that proof beyond a reasonable doubt is not required. *See United States v. Knights*, 534 U.S. 112, 120 (2001). In Michigan, probation may be revoked if the evidence, "viewed in a light most favorable to the prosecution, . . . enable[s] a rational trier of fact to find a probation violation by a preponderance of the evidence." *People v. Breeding*, 772 N.W.2d 810, 819 (Mich. Ct. App. 2009); Mich. Ct. R. 6.445(E)(1). And where resolution of a factual issue "turns on the credibility of witnesses or the weight of evidence," deference is owed to the trial court's resolution of these issues. *Id.*

15

Under this standard, the Court cannot say that there was insufficient evidence to find Filipunas guilty of this probation violation. At the probation-revocation hearing, Angela testified: "He told me if [I got] a lawyer and fought him on custody and stuff . . . that it would end very badly for me." (ECF No. 9-8, PageID.320.) And, when asked if she had threatened him, she said: "I would be like, you know, I wish you would go [to prison] just so you would leave me alone. But he would always threaten me, and I was too scared. And he said no one would listen to me, so I didn't." (*Id.*) So there was some testimony that Filipunas tried to prevent Angela from contacting law enforcement about the abuse she suffered.

Given the lower preponderance-of-the-evidence standard and the deference owed to the trial court's credibility determinations, the Court cannot say that this finding was so deficient that it violated due process. *See Allison v. Bell*, No. 2:10-CV-11570, 2011 WL 479968, at *4 (E.D. Mich. Feb. 7, 2011) (reaching similar conclusion on sufficiency of evidence for revocation of parole).

### C.

Filipunas' final claim is that the trial court violated his due process rights when it failed to give him a post-revocation evidentiary hearing based on the new evidence discussed above. (ECF No. 1, PageID.2.) The trial court rejected his argument, noting that "there is no authority in Michigan stating that a Defendant is entitled to a new probation violation hearing upon a finding of newly discovered evidence." (ECF No. 9-10, PageID.435.)

16

This claim is not cognizable on habeas review. "The Sixth Circuit [has] consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). Because Filipunas' claim is based on the denial of an evidentiary hearing with respect to claims raised in his post-revocation motions, this Court cannot review it.

### D.

Finally, to whatever extent Filipunas seeks relief on a freestanding actual innocence claim, he would not be entitled to such relief.

"The Supreme Court has not answered whether freestanding actual innocence claims are cognizable on habeas review." *Smith v. Nagy*, 962 F.3d 192, 207 (6th Cir. 2020) (citing *House v. Bell*, 547 U.S. 518, 555 (2006)). But the Sixth Circuit has "repeatedly indicated that such claims are not cognizable on habeas." *Id.* (citing *Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) (collecting cases)).

And even if such a claim were available, Filipunas' claim would not succeed. In *Smith v. Nagy*, the Sixth Circuit rejected a claim of actual innocence where an affidavit "undermine[d] the reliability of [two key witnesses'] testimony, but f[ell] short of affirmatively proving that [the petitioner] [wa]s innocent. The affidavit does not provide [petitioner] with an alibi, show that someone else killed [the victim], or otherwise preclude any possibility of [his] guilt." *Id.* (internal quotation marks omitted). The evidence here is even less probative of Filipunas' innocence. As explained at length above, Filipunas' evidence is generally weak and is neither new

17

nor reliable. So Filipunas has not succeeded in showing that "he is probably innocent." *See id.*

In sum, the Court concludes that the revocation of probation was not based upon an unreasonable factual determination in light of the evidence presented in the probation-revocation proceedings, nor was the decision to revoke probation contrary to or an unreasonable application of clearly established federal law.

### IV. Conclusion

Thus, the Court DENIES Filipunas' petition for habeas corpus. By separate order, the Court will deny Filipunas a certificate of appealability.

SO ORDERED.

Dated: February 22, 2023

                                      s/Laurie J. Michelson
                                      LAURIE J. MICHELSON
                                      UNITED STATES DISTRICT JUDGE